[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15483
_____

D.C. Docket No. 1:12-cv-02735-MHS

TONY W. STRICKLAND,

Plaintiff - Appellant,

versus

RICHARD T. ALEXANDER,
Clerk of Court of the State Court of
Gwinnett County, Georgia,
GREENE & COOPER, LLP,
JPMORGAN CHASE BANK, NA,

Defendants - Appellees,

DISCOVER BANK,

Defendant.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 20, 2014)

Before WILSON and ROSENBAUM, Circuit Judges, and SCHLESINGER,[*] District Judge.

ROSENBAUM, Circuit Judge:

Plaintiff-Appellant Tony W. Strickland's limited funds include those that he obtained from a workers' compensation settlement after suffering a permanent disability on the job and those that he receives from his Social Security disability payments. He keeps these funds in two bank accounts that he shares with his wife, who, like Strickland, is entirely dependent on the funds in the accounts to live. Luckily for Strickland, the law protects workers' compensation funds and Social Security disability payments from garnishment.

But that did not stop one of Strickland's creditors from having the clerk of court for the State Court of Gwinnett County, Georgia, issue a garnishment summons that resulted in the freezing of Strickland's workers' compensation funds for almost four months before Strickland's creditor finally conceded that Strickland's funds were exempt from garnishment and agreed to the dissolution of the hold on his funds. Now Strickland seeks declaratory and injunctive relief against the Georgia post-judgment garnishment statute to prevent that same thing from happening again to him and his wife, who remain judgment debtors. Because it is substantially likely that Strickland and his wife's exempt funds soon will again

---

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

be the subject of a garnishment summons, we reverse the district court's dismissal of Strickland's lawsuit for lack of standing and remand for consideration of whether Georgia's post-judgment garnishment statute is constitutionally sound.

## I.

In 2004, Strickland beat nasal cavity cancer. Because of his condition, however, he was unable to work as many hours as he could before he fell ill. He soon found himself unable to pay all of his bills, and in 2005, he defaulted on his Discover Bank ("Discover") credit-card balance. In 2009, to recover the balance owed, Discover, represented by Greene & Cooper, LLP ("G&C"), filed suit against Strickland in State Court for Fulton County, Georgia. (Civil Action No. 09VS171247).

Also in 2009, Strickland injured his back at work, leaving him permanently disabled. In February 2011, he received a $30,000 workers' compensation settlement to compensate him for his injury. He deposited these funds into a newly formed JPMorgan Chase Bank, N.A. ("Chase") savings account and listed his wife as a joint accountholder so that she would be able to access the funds should his health further deteriorate. The Stricklands periodically drew upon these funds to help pay for living and healthcare expenses. In the fall of 2011, Strickland also began receiving Social Security Disability benefits.

3

On April 4, 2012, Discover obtained a default judgment against Strickland for the monies he owed in the principal amount of $13,849.93, plus interest of $2,138.64, attorney's fees of $1,613.61, and court costs of $147.50.[1] Approximately three months later, on July 6, 2012, Discover, again represented by G&C, filed a garnishment action against Strickland's Chase funds to enforce its default judgment in the State Court of Gwinnett County, Georgia.

At that time and to this day, Defendant-Appellee Richard T. Alexander was and is the Gwinnett County clerk of court. Accordingly, Alexander's office generated the garnishment summons to be served upon Chase (the garnishee) in accordance with Georgia's statutory requirements. The summons, served on July 11, 2012, advised Chase to "hold all [of Strickland's] property, money and wages, except what is exempt," but did not provide an explanation as to what types of property are exempt from garnishment (such as unemployment benefits, Social Security Disability benefits, and workers' compensation benefits). Georgia does not require garnishment summonses to include such information. Pursuant to the summons, Chase promptly put a hold on Strickland's account.

Strickland learned of the garnishment on July 16, 2012, when he received a certified letter from G&C and a first-class letter from Chase. G&C's letter notified

---

[1] These amounts add up to $17,749.68, although the record refers to the total amount that Discover sought to garnish as $18,096.65, and $18,302.65. We need not concern ourselves with the actual sum sought by Discover in the garnishment proceeding because it does not bear on the issues in this appeal, and, in any case, Discover filed a satisfaction of judgment on November 27, 2012.

Strickland that a garnishment proceeding had been instituted against his property and provided the case caption and amount sought, but it did not mention that Strickland's funds might be exempt from garnishment.

For its part, Chase's letter explained that the bank had recently received the garnishment summons, and that, as a result, it was required by federal law to place a hold on Strickland's account. It further advised Strickland that he would be unable to access the funds in his account and informed him of potential bank fees that he might become liable for, the need to consult with an attorney, and the way in which the funds could be released. Unlike the G&C letter, however, the Chase letter also disclosed to Strickland that certain forms of property might be exempt from garnishment, such as unemployment benefits, disability benefits, and workers' compensation benefits. Therefore, the Chase letter recommended that Strickland "immediately contact the judgment creditor's attorney" if he believed that his funds might be exempt.

Upon receipt of these letters, Strickland went to the nearest Chase branch, where he was told that the remainder of his workers' compensation settlement funds, totaling $15,652.67, had in fact been frozen. Following the suggestion contained within Chase's letter, Strickland contacted G&C to try to persuade it to release the garnishment, but to no avail. Strickland then became "upset, felt nauseous, and began to cry and shake," because, according to Strickland, the

frozen funds were vital to the Stricklands' ability to pay for living and healthcare expenses.

On August 20, 2012, Chase answered the garnishment summons by paying into court $15,652.67, which constituted the entire remainder of Strickland's workers' compensation funds. These funds were retained by the clerk's office throughout the pendency of the garnishment action.

Acting through counsel, Strickland first tried to resolve the matter without resorting to the formal claims process. When he was unsuccessful, Strickland then filed a statutory claim to the funds on September 4, 2012, on the grounds that the funds were exempt from garnishment under Georgia law.[2] Discover opposed the claim, and a hearing was scheduled for October 24, 2012. The day before the hearing, however, Discover voluntarily dismissed the action.

An order to release the funds was entered on October 24, 2012. On October 29, 2012, the court clerk's office issued a check for the return of Strickland's workers' compensation funds, which Strickland's counsel received on November 2, 2012. Discover filed a satisfaction of judgment on November 27, 2012.

---

[2] *See* O.C.G.A. § 34-9-84 ("No claim for [workers'] compensation under this chapter shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors.").

6

## II.

Strickland filed the present action on August 8, 2012, while Discover's state-court garnishment action was still pending and when his funds were therefore still frozen. At that time, Chase had not yet filed its answer in the state-court garnishment action, so Strickland was unable to assert any direct claim for the funds.

Strickland also set forth the following pertinent allegations in his complaint:

> 27. Mr. Strickland is still a judgment debtor to [Discover] . . . .
>
> 28. This judgment is likely to remain unsatisfied for some time because Mr. Strickland and his wife currently subsist on a modest income, consisting only of Mr. Strickland's monthly check for Social Security Disability, in the amount of $1,300.00.
>
> 29. This account is likely to be the subject of a future garnishment because Ms. Strickland, the joint account holder, has judgments against her, as well as other debts that are likely to be reduced to judgment. Furthermore Mr. Strickland has another bank account, which contains only his Social Security Disability income, which may be subject to garnishment by Discover. Neither Mr. Strickland nor his wife is likely to satisfy any of their debts in the near future.

Compl. ¶¶ 27–29. In light of these facts, Strickland brought two claims against Discover, Chase, G&C, and Alexander: one under 42 U.S.C. § 1983 for acting under color of state law and unconstitutionally depriving Strickland of his property

7

in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and one under the Georgia Bill of Rights for depriving Strickland of his property in violation of the Due Process Clause of the Georgia Constitution.   In short, he alleged that Georgia's post-judgment garnishment statute, O.C.G.A. § 18-4-60, *et seq.*, failed to provide him with sufficient notice of the garnishment and exemptions, and it failed to establish procedures complying with due-process requirements that would allow him to challenge the garnishment by claiming an exemption and having his funds returned.

Strickland sought various forms of relief, including the following: (1) a declaration that the specified portions of the garnishment statute are unconstitutional; (2) injunctive relief against Alexander, Discover, G&C, and Chase to restrain them from using the allegedly unconstitutional garnishment process against Strickland's property and from freezing any exempt funds in the future; and (3) monetary damages against Discover, G&C, and Chase for the injuries that Strickland alleged that he incurred as a result of his Chase funds having been frozen.[3]

---

[3] Strickland alleged that he "suffered great hardship" due to his inability to draw upon his workers' compensation funds for nearly four months.  For instance, Strickland has a heart condition for which he takes medication.  Failure to take the medication every day puts him at greater risk for a stroke.  By the end of July 2012, Strickland's funds had run out, and because he could not access his workers' compensation funds, he could not purchase his medicine for three days.  Although he did not suffer a stroke or other cardiac episode during this three-day hiatus, Strickland alleged that the increased health risk that he faced while not taking his medicine caused him and his family great emotional distress.  Additionally, in October 2012, Strickland

After Discover dissolved the underlying debt and dismissed its garnishment claim, it was dismissed from this action with prejudice, by consent. The trial court then turned its attention to the outstanding motions to dismiss filed by Chase and G&C, respectively. On April 11, 2013, the trial court granted Chase's Rule 12(b)(6), Fed. R. Civ. P., motion, concluding that Chase had not acted "under the color of state law" for purposes of Strickland's 42 U.S.C. § 1983 claims. In the same order, the court determined that Strickland lacked standing to continue pursuing injunctive and declaratory relief against G&C and similarly *sua sponte* dismissed without prejudice Strickland's claims for injunctive and declaratory relief against Alexander.

The dismissal order, however, preserved Strickland's claims for damages against G&C, holding that Strickland had stated a claim for violation of his due-process rights. The parties then presented a record upon cross motions for summary judgment stipulating that Strickland had suffered damages in the amount of $10,000 for his inability to access his workers' compensation funds for nearly four months as a result of the garnishment action initiated by G&C. Concluding that G&C was protected by a "good faith" defense and that Strickland had failed to

---

developed a blood clot in his hand that required surgery. He delayed surgery to address the problem, however, because he could not afford the hundreds of dollars that the procedure would cost since he could not access his workers' compensation funds. Eventually, because his hand became so swollen that he could not use it, and because his forearm had turned black, his family decided that Strickland must schedule the surgery, anyway, and worry about payment later.

satisfy its burden of proof to affirmatively show G&C's bad faith, the court granted G&C's motion for summary judgment on October 29, 2013. Strickland then lodged this timely appeal against Defendant Alexander only.

## III.

We review *de novo* an order granting a motion to dismiss. *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1176 (11th Cir. 2009) (citation omitted). In conducting our review, we "accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Id.* (citation and internal quotation marks omitted). We also consider *de novo* whether a plaintiff has standing. *Id.* (citation omitted).

## IV.

In this appeal, we must decide three questions: (1) whether Strickland had standing to seek declaratory and injunctive relief against Defendant-Appellee Alexander; (2) assuming that Strickland had standing, whether the release of Strickland's funds and the satisfaction of the judgment creditor's claim mooted Strickland's claim against Defendant-Appellee Alexander; and (3) assuming that Strickland had standing and that his claim has not been mooted, whether various provisions of Georgia's post-judgment garnishment statute satisfy Fourteenth Amendment and Georgia state constitutional due-process requirements. We address each question in turn.

*A. Justiciability*

Article III of the Constitution extends the jurisdiction of federal courts to only "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136 (1992). The case-or-controversy restriction imposes what are generally referred to as "justiciability" limitations. *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998) (citing *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 621-22 (11th Cir. 1994) (citing *Flast v. Cohen*, 392 U.S. 83, 94-95, 88 S. Ct. 1942, 1949-50 (1968))). Justiciability doctrine serves two purposes: (1) it aims to prevent the judiciary from infringing on the powers of the executive and legislative branches, and (2) it seeks to ensure that the judiciary considers only those matters presented in an adversarial context. *Id.* (citing *Fla. Azalea Specialists*, 19 F.3d at 621-22).

Justiciability doctrine is composed of "three strands": standing, ripeness, and mootness. *See Leahy*, 145 F.3d at 1244. The failure of any one of these strands can deprive a federal court of jurisdiction. This case involves both standing and mootness issues.

**1.    Standing**

At an "irreducible constitutional minimum," standing imposes upon a plaintiff the requirement to make the following three showings:

(1)    the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest

11

which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[;]'"

(2)    there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[;]" and

(3)    it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* (quoting *Lujan*, 504 U.S. at 560-61, 112 S. Ct. at 2136 (citation omitted)).

a.  Injury in Fact

Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, for example, the injury-in-fact requirement insists that a plaintiff "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citations omitted). This is because injunctions regulate future conduct only; they do not provide relief for past injuries already incurred and over with. *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). So a plaintiff seeking declaratory or injunctive relief must allege and ultimately prove "a real and immediate—as opposed to a merely hypothetical or conjectural—threat of *future* injury." *Id.* (citation omitted).

12

In considering whether Strickland had satisfied this requirement, the district court concluded that Strickland did not because it found that the risk that Strickland would suffer future injury was too remote.  The court reached this conclusion based in large part on *Malowney*, 193 F.3d 1342, a case where the plaintiffs challenged Florida's post-judgment garnishment statute.  While we can understand how the district court reached this conclusion, in *Malowney*, we expressly chose not to consider whether facts as they exist in Strickland's case would satisfy the injury-in-fact requirement.  *Id.*, 193 F.3d at 1347 n.6.  Now that we are faced with these facts, we conclude that *Malowney* and its brief discussion of *Finberg v. Sullivan*, 634 F.2d 50 (3d Cir. 1980), warrant the conclusion that Strickland has alleged sufficient facts in this case to demonstrate a substantial likelihood that he will suffer garnishment proceedings in the future under Georgia's post-judgment garnishment statute.

In *Malowney*, a bank froze the plaintiffs' checking-account funds in accordance with a writ of garnishment.  193 F.3d at 1344.  At the time of garnishment, the only funds in the account were Social Security Disability benefits and United States Army retirement benefits, both of which are exempt from garnishment under federal law.  *Id.* at 1345.  The plaintiffs sued the clerk of a circuit court that issued the writ, seeking only declaratory relief pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201.  *Id.*

13

Specifically, they sought a judgment declaring notice provisions of Florida's post-judgment garnishment statute unconstitutional in part because those provisions failed to afford the plaintiffs adequate due process. *Id.*

When we reviewed the district court's order granting the motion to dismiss,[4] we concluded that "the amended complaint [did] not contain any allegations which could reasonably support a finding that the Malowneys are likely to be subject to future injury from the application of the statute they challenge." *Id.* at 1347. The absence of several facts underpinned this determination.

First, we noted that the complaint did not allege that the Malowneys had checking-account funds likely to be subject to garnishment in the future, or even that they were still judgment debtors. *Id.* For these reasons, we declined to speculate that the Malowneys were, or soon would become, indebted to a different judgment creditor and, as a result, would have a garnishment issued against them under the challenged statute. *Id.*

Second, we emphasized that both the creditor that obtained the garnishment summons against the Malowneys' bank account and the bank that froze the Malowneys' account were both on notice of the exempt status of the Malowneys' funds as a result of the Malowneys' case. *Id.* at 1347-48. We doubted that they

---

[4] The district court in *Malowney* concluded that Florida's post-judgment garnishment statute satisfies due process and is constitutional because it provides sufficient notice and an adequate opportunity to be heard. *Malowney*, 193 F.3d at 1346. We did not reach this issue on appeal because we held that the claim should have been dismissed since the plaintiffs lacked standing. *Id.*

would risk liability over wrongful garnishment again in the future. *Id.* These facts made the likelihood of a recurrence of the attempted garnishment of the Malowneys' exempt funds weak and deprived the Malowneys of standing to seek declaratory and injunctive relief. *Id.* at 1348.

In reaching this conclusion in *Malowney*, we were careful to distinguish the Third Circuit's decision in *Finberg*, 634 F.2d 50. *Malowney*, 193 F.3d at 1347 n.6. In *Finberg*, a widow whose sole source of income was Social Security retirement benefits, sought to have the application of Pennsylvania's post-judgment garnishment statute declared unconstitutional after the statute was used to initiate garnishment proceedings on Finberg's bank accounts that held her Social Security benefits. 634 F.2d at 51-52. The Third Circuit determined that Finberg's claim had not been mooted as a result of Finberg's recovery of all of the funds that had been attached through the garnishment proceedings because Finberg had demonstrated "a 'reasonable expectation' that [she would] be subject to a recurrence of the activity that [she] challenge[d]." *Id.* at 55 (citation omitted).

When we discussed *Finberg* in *Malowney*, we explained,

> *Finberg* . . . involved different facts, because in that case the plaintiff remained a judgment debtor, and she was an elderly widow on a modest income, from which the court inferred that the judgment was likely to remain unsatisfied for some time. . . .

193 F.3d at 1347 n.6.  Although we noted that the Third Circuit had considered *Finberg* under a mootness analysis, as opposed to a standing analysis, *see id.*, the fact that the *Finberg* Court found, under the facts that Finberg alleged, a "reasonable expectation" that Finberg would be subjected again to garnishment proceedings on her exempt funds certainly suggests that the Third Circuit would have found these same facts to have been sufficient to establish standing by demonstrating a "substantial likelihood" that Finberg would suffer injury in the form of garnishment proceedings on her exempt funds in the future.

Taking Strickland's allegations as true and liberally construing the complaint in his favor (as we must when we review a motion to dismiss), we note that none of the disqualifying facts that existed in *Malowney* are present in Strickland's case, yet all of the facts, plus more, that allowed Finberg to escape mootness exist in Strickland's case.  Unlike the Malowneys but similar to Finberg, Strickland alleged in his complaint that he and his joint-accountholder wife were both judgment debtors and that his wife had "judgments against her, as well as other debts that are likely to be reduced to judgment."  Because of this situation, as Strickland points out in his brief, he is "essentially a sitting duck."  Also unlike the Malowneys but again similar to Finberg's situation as construed by the court, Strickland averred that he and his wife subsist on a very modest income consisting only of Strickland's disability benefits, so they were very unlikely to satisfy their

16

outstanding debts "for some time."  In addition, and once again in contrast to the Malowneys, Strickland asserted that, at a bank other than Chase, he had a second account containing only his Social Security disability income.

All of these facts point strongly to one conclusion:  it is substantially likely that it is simply a matter of time before another judgment creditor seeks to garnish the monies that the Stricklands have in at least one of their bank accounts.  And, unlike in *Malowney*, we cannot count on the creditor and the bank to have learned their lessons that the Stricklands' funds are exempt.  This is so because the Stricklands have judgments against them from creditors other than Discover, the creditor involved in this case.  And they have a second bank account containing exempt funds at a bank other than Chase, the bank involved in this case.  These circumstances create a "real and immediate" likelihood of future injury and satisfy the injury-in-fact requirement for seeking declaratory and injunctive relief.

### b.  Causation

We also find that Strickland has met the second standing requirement:  that the injury suffered is fairly traceable to the defendant.  This "causal connection" must "link the injury to the complained-of conduct" of the defendant and is not satisfied if the injury results instead from "the independent action of some third party not before the court."  *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1257 (11th Cir. 2012) (quoting *Bennett v. Spear*, 520 U.S.

17

154, 167, 117 S. Ct. 1154, 1163 (1997) (quotation marks omitted)).  In making this inquiry, we note that "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." *Focus on the Family*, 344 F.3d at 1273 (citation omitted).

Here, Defendant Alexander is the court clerk with the responsibility to process garnishments by docketing the garnishment affidavit, issuing the summons of garnishment, depositing the garnished property into the court registry, and holding the property.  At the time that Strickland filed his complaint, Defendant Alexander had docketed the garnishment and issued the summons of garnishment. He was awaiting receipt of the garnished property from Chase and planned to hold the property until the garnishment action was resolved.  Similarly, the next time that Strickland's property is the subject of a garnishment action, Alexander will be required to follow these exact same procedures.  So Strickland's inability to access his exempt funds will be "fairly traceable" to Alexander's actions, not to "the independent action of some third party not before the court."

Nor, as Alexander suggests, does the fact that "his duties are ministerial in nature" somehow render Strickland's injury not fairly traceable to Alexander. Alexander provides no authority for the proposition that conduct must be "unlawful" for a resulting constitutional deprivation to be "fairly traceable" to that conduct, and he similarly identifies no support for the notion that an injury cannot

18

be deemed "fairly traceable" to ministerial conduct.  We decline to reach such a conclusion.

In *Finberg*, the Third Circuit considered whether the prothonotary and sheriff who issued the writ of execution and served it on the garnishee were proper defendants in the action.  In conducting this analysis, the Third Circuit noted that it had to determine whether the prothonotary and sheriff "[met] the prerequisites to adjudication in a federal court."  634 F.2d at 53.  In other words, the court evaluated whether a causal connection between Finberg's injury and the prothonotary and sheriff's actions existed under standing doctrine.

The Third Circuit concluded that the prothonotary and sheriff's actions constituted the "immediate causes of the attachment and freezing of [the plaintiff's] bank accounts."  *Id.* at 54.  As the court further explained, "If the rules that they were executing are unconstitutional, their actions caused an injury to [the plaintiff's] legal rights."  *Id.*  In reaching this conclusion, the Third Circuit expressly rejected the proposition that the requisite causation did not exist because the prothonotary and the sheriff executed only ministerial duties in issuing and serving the garnishment.  *Id.*  The court reasoned that "the inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights."  *Id.*

This case is exactly the same:  Alexander's docketing of the garnishment affidavit and issuance of the summons of garnishment were the immediate cause of the attachment and freezing of Strickland's account, and the requirement that he execute these ministerial duties in the future when presented with the appropriate documents means that Alexander will again be a cause of any garnishment that befalls Strickland.  As a result, Strickland's injury is fairly traceable to Alexander's conduct.

<u>c.  Redressability</u>

Finally, turning to the third prong of the standing inquiry, it is likely that Strickland's injury would be redressed by a favorable decision.  A federal court could declare the Georgia garnishment process unconstitutional or enjoin any future similar actions that lacked adequate due process protections.  Because Strickland has demonstrated injury in fact, causation, and redressability with respect to the declaratory and injunctive relief he seeks, Strickland enjoys Article III standing.

**2. Mootness**

Having established that a justiciable controversy existed between Strickland and Alexander at the time that Strickland filed his complaint, we must now decide whether the controversy became moot when Strickland received his previously garnished funds from the State Court of Gwinnett County.

The Supreme Court has often remarked that "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth*, 528 U.S. at 189, 120 S. Ct. at 709 (citation and internal quotation marks omitted). But mootness and standing "are distinct doctrines that must not be confused." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 n.16 (11th Cir. 2007). The principle difference is that exceptions to the mootness doctrine exist, while they do not for standing. *Id.*

As relevant here, the "capable of repetition, yet evading review" exception to mootness is at issue. *Id.* This exception applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004) (citation and internal quotation marks omitted). We find that Strickland has satisfied both of these requirements.

First, garnishment proceedings against exempt funds are generally too short to be fully litigated before the challenged conduct is ceased. As the Third Circuit explained in *Finberg*,

> Any lawsuit challenging the constitutionality of the attachment would require, at the very least, one year to

21

proceed from the filing of a complaint in the district court to the entry of judgment in this court. The attachment probably would end within that time with the occurrence of either of two events: the release of the accounts from attachment pursuant to claims of exemption, as occurred here, or the entry of a final judgment in the state court garnishment action. . . . Neither event should take as long as one year to occur because the issues and procedures in a garnishment are relatively simple. . . .

*Finberg*, 634 F.2d at 56 (citations omitted). In *Finberg*, the proceedings lasted for six months. *Id.*

Under Georgia law, garnishment proceedings similarly require less than a year to complete. Georgia's post-judgment garnishment statute generally provides a garnishee with forty-five days to answer a garnishment summons. O.C.G.A. § 18-4-62(a). The judgment debtor may then file a claim for funds within fifteen days of the garnishee's answer. O.C.G.A. § 18-4-85. Therefore, although a court typically will not rule on any exemptions within sixty days of the commencement of a garnishment action, it is unlikely that a garnishment action will last longer than a few months. In this case, less than four months went by between Discover's filing of the garnishment action against Strickland and Discover's dismissal of that very same action.

While state-court garnishment proceedings are relatively short in duration, constitutional challenges to statutes in federal court, in contrast, can easily require more than a year to resolve. The state attorney general may wish to become

22

involved in the proceedings, discovery may be appropriate, and the issues raised may be complex.  Additional time, of course, would be required for appellate, and, if appropriate, Supreme Court review of any district-court decision.

For these reasons, we have held that activities spanning less than one year are likely to evade review.  *Bourgeois*, 387 F.3d at 1309 ("[W]e conclude that one year is an insufficient amount of time . . . to adjudicate the typical case. Consequently, if this issue arises again . . . it is likely to evade review because the [challenged conduct] will occur before the parties have a final ruling on the merits from a court of last resort.").  *See also Turner v. Rogers*, ___ U.S. ___, 131 S. Ct. 2507, 2515 (2011) (because periods of incarceration of less than twelve months are not long enough for a person to challenge the constitutionality of the procedures used to subject the person to incarceration, where a person can show that he is likely to suffer future imprisonment of less than twelve months for the same reason, the case does not become moot upon the prisoner's release from incarceration).

Other courts tend to agree with this proposition, particularly in the context of challenges to garnishment statutes.  For example, besides the Third Circuit's decision in *Finberg*, the First Circuit in *Dionne v. Bouley*, 757 F.2d 1344, 1349 (1st Cir. 1985), concluded that a challenge to Rhode Island's garnishment statute was not moot even if the funds sought to be garnished had been released because "[b]y

the time a case can be heard and decided in the federal court, the attached funds will usually have been obtained by the creditor or else released." Similarly, in *Harris v. Bailey*, 675 F.2d 614, 616 (4th Cir. 1982), the Fourth Circuit determined that a challenge to West Virginia's garnishment statute was not moot, though the plaintiff's funds had been returned to her, because the state's "brief procedure" was capable of evading review. Strickland's challenge to Georgia's garnishment statute suffers from the same durational problem: the garnishment proceeding itself is highly unlikely to outlive the length of time that it takes to resolve the constitutionality of the statute used to execute the garnishment proceeding. As a result, Strickland's challenge to Georgia's post-judgment garnishment statute satisfies the first prong of the "capable of repetition, yet evading review" test.

It also satisfies the second prong. We have already concluded in our analysis of the injury-in-fact requirement under the standing inquiry that a substantial likelihood exists that Strickland's funds will again be garnished to attempt to satisfy a debt against him or his wife that has already been reduced to a judgment. Certainly, where a substantial likelihood of an event exists, a "reasonable expectation" does as well. In summary, Strickland's available funds consist solely of his exempt workers' compensation monies and his exempt Social Security disability payments. His meager income cannot currently or in the near term satisfy his and his wife's outstanding debts, some of which have already been

reduced to judgments. And, because Strickland's wife is a joint accountholder of both bank accounts, Strickland's funds within those accounts are at significant risk of garnishment. So garnishment proceedings against Strickland are "capable of repetition." *See also Finberg*, 634 F.2d at 55-56 (finding a "reasonable expectation" that garnishment proceedings against an indebted widow on a modest income would again occur).

For these reasons, we hold that the release of Strickland's funds and the satisfaction of his debt to Discover did not moot Strickland's claim against Defendant Alexander and that Strickland's claim for declaratory and injunctive relief still presents a live controversy.

## B. Constitutionality of Georgia's Post-Judgment Garnishment Statute

Because Strickland has established that he has standing and his claim is not moot, we now turn to the constitutionality of Georgia's post-judgment garnishment statute. Although the Supreme Court has remarked that the courts of appeals enjoy discretion to determine what questions may be taken up and resolved for the first time on appeal, "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 119-21, 96 S. Ct. 2868, 2876-77 (1976) (citation omitted). The reason for this is to ensure that all parties have had an opportunity to offer all evidence they believe

relevant to the issues so that they will not be surprised when the issues are decided by final decision on appeal without first having had an opportunity to be heard.  *Id.*

In *Singleton*, for example, the Supreme Court held that the Eighth Circuit's resolution on the merits of a challenge to the constitutionality of a Missouri statute was improper and "an unacceptable exercise of [the Eighth Circuit's] appellate jurisdiction."  *Id.* at 119-20, 96 S. Ct. at 2877.  In that case, the defendant had filed only a pre-answer motion to dismiss for lack of standing and had filed no answer or other pleading addressing the merits, had stipulated to no facts, had given no intimation of what defenses, if any, he might have other than that the plaintiffs' alleged lack of standing, and had limited himself on appeal entirely to the standing determination.  *Id.*

The development of the constitutional issue in this case suffers similarly. Here, although Defendant-Appellee Alexander filed an answer to Strickland's complaint, like the *Singleton* defendant, Alexander did not substantively address the constitutionality of the challenged portions of the statute in the district court. And, while Alexander has briefed the constitutional issue on appeal for the first time, he is not charged with defending the constitutionality of Georgia's statutes; that is the job of the Attorney General of the State of Georgia.  Nor, unlike Georgia's Attorney General, does Alexander have a real interest in the constitutionality of the statute at issue here.

26

Moreover, based on the record below, it appears that Georgia's Attorney General may indeed wish to participate in proceedings relating to the constitutionality of Georgia's post-judgment garnishment statute. Although Georgia's Attorney originally declined to intervene in this action after being provided notice that the matter involved a challenge to the constitutionality of O.C.G.A. § 18-4-60, he indicated that he intended to monitor the case and that he might file an amicus brief addressing the constitutionality of the statute. Once the district court dismissed this action *sua sponte* for lack of standing, however, the Attorney General likely believed that no need existed to file an amicus brief addressing the constitutionality of the statute with our Court. We think that development of the constitutional issue would benefit from Georgia's Attorney General's involvement, should he elect to participate in the proceedings. We therefore remand this case to the district court for further proceedings to evaluate the constitutionality of the challenged portions of Georgia's post-judgment garnishment statute, O.C.G.A. § 18-4-60, *et seq.*

## V.

In sum, we hold that Strickland enjoys Article III standing. We further conclude that Strickland's claim is not moot but rather presents a live controversy that is ready for adjudication. Finally, we decline to pass on the constitutionality of Georgia's post-judgment garnishment statute before ensuring that all interested

parties have had notice and, if desired, a chance to present all evidence and argument, and the district court has had an opportunity to examine and consider that evidence and argument when ruling on the merits.  For these reasons, we reverse the district court's *sua sponte* dismissal of Strickland's claims against Alexander and remand to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**